ESTATE of Otha Faye McQuaid
CLAVERIA, Petitioner,

v.

Patricio CLAVERIA, Respondent.

No. B–9421.

Supreme Court of Texas.

Feb. 11, 1981.

Rehearing Denied March 18, 1981.

Turner, Hitchins, McInerney, Webb and Hartnett, James J. Hartnett, Dallas, for petitioner.

Patricia A. Hill, Charla J. H. Tindall, Dallas, for respondent.

POPE, Justice.

The question presented is whether there is some evidence, more than a scintilla, of a common-law marriage. This case arose as a probate matter in which Patricio Claveria contested the will of Otha Faye McQuaid Claveria. The probate court dismissed the contest after sustaining a plea to abate which stated that Patricio was not an interested person as defined by the Probate Code.[1] The trial court concluded that Patricio had no interest in the estate property because his ceremonial marriage to Otha Faye was void by reason of a prior undissolved common-law marriage. The court of civil appeals reversed the judgment, holding that there was no evidence of the prior common-law marriage. 597 S.W.2d 434. We hold that there was evidence of the marriage and remand the cause to the court of civil appeals to determine the factual insufficiency points.

Otha Faye died testate on March 4, 1978, leaving all of her property to her two children by a former marriage. Patricio and Otha Faye were ceremonially married in November, 1974, and he claims a communi-

ty and homestead interest in the property acquired since that time. His only claim in the trial court and on appeal is that he is an interested party by reason of his marriage to Otha Faye. He has not asserted that he has an interest as a putative spouse nor because of any other right of ownership in the property. The inference should not be drawn from this opinion, that a marriage is always essential to proof of an interest in an estate. The points that were presented in the court of civil appeals relate only to the validity of the marriage between Patricio and Otha Faye.

■ After Patricio's and Otha Faye's ceremonial marriage, they lived together as husband and wife until Otha Faye died on March 4, 1978. We must begin, therefore, with the presumption that their marriage was valid. Tex.Fam.Code Ann. § 2.01.[2] The presumption that the most recent marriage is a valid one continues until one proves the impediment of a prior marriage and its continuing validity. *Texas Employers' Ins. Ass'n v. Elder*, 155 Tex. 27, 282 S.W.2d 371 (1955); *Nixon v. Wichita Land & Cattle Co.*, 84 Tex. 408, 19 S.W. 560 (1892); *Carroll v. Carroll*, 20 Tex. 731 (1858); *Lockhart v. White*, 18 Tex. 102 (1856); *Yates v. Houston*, 3 Tex. 433 (1848). *See also* Allen, *Presumption of the Validity of a Second Marriage*, 20 Baylor L.Rev. 206 (1968); Annot., *Presumption as to Validity of Second Marriage*, 14 A.L.R.2d 7 (1950); 52 Am.Jur.2d *Marriage* §§ 140–167 (1970).

1. § 3. Definitions and Use of Terms
   When used in this Code, unless otherwise apparent from the context:
   \* \* \* \* \* \*
   (r) "Interested persons" or "persons interested" means heirs, devisees, spouses, creditors, or any others having a property right in, or claim against, the estate being administered; and anyone interested in the welfare of a minor or incompetent ward.

2. Section 2.01. State Policy
   In order to promote the public health and welfare and to provide the necessary records, this code prescribes detailed and specific rules to be followed in establishing the marriage relationship. However, in order to provide stability for those entering into the mar-

riage relationship in good faith and to provide legitimacy and security for the children of the relationship, it is the policy of this state to preserve and uphold each marriage against claims of invalidity unless strong reasons exist for holding it void or voidable. Therefore, every marriage entered into in this state is considered valid unless it is expressly made void by this chapter or unless it is expressly made voidable by this chapter and is annulled as provided by this chapter. When two or more marriages of a person to different spouses are alleged, the most recent marriage is presumed to be valid as against each marriage that precedes it until one who asserts the validity of a prior marriage proves its validity.

■ After some evidence of a prior and continuing marriage has been introduced, the weight of such evidence must be determined by the finder of fact. *Davis v. Davis,* 521 S.W.2d 603 (Tex.1975); *Woods v. Hardware Mut. Casualty Co.,* 141 S.W.2d 972 (Tex.Civ.App.—Austin 1940, writ ref'd). *See* O. Speer, Texas Family Law §§ 1:46, 5:90 (5th ed. 1975); 38 Tex.Jur.2d *Marriage* §§ 44–46 (1962); Note, *Evidence-Sufficiency of Evidence to Rebut Presumption of Validity of Second Marriage,* 1 Baylor L.Rev. 203 (1948); Note, *Workman's Compensation—Presumption of Validity of Second Marriage to Allow Beneficiary to Recover,* 6 Baylor L.Rev. 242 (1954); Allen, *supra,* at 215–17; Note, *Marriage—Evidence,* 33 Texas L.Rev. 1097 (1955).

■ A valid common-law marriage consists of three elements: (1) an agreement presently to be husband and wife; (2) living together as husband and wife; and (3) holding each other out to the public as such. *Collora v. Navarro,* 574 S.W.2d 65 (Tex. 1978); *Humphreys v. Humphreys,* 364 S.W.2d 177 (Tex.1963). This law has been codified in the Family Code.[3]

■ Marriage, whether ceremonial or common-law, is proved by the same character of evidence necessary to establish any other fact. *Stafford v. Stafford,* 41 Tex. 111 (1874); O. Speer, Texas Family Law § 5:89 (5th ed. 1975). Thus, proof of common-law marriage may be shown by the conduct of the parties, or by such circumstances as their addressing each other as husband and wife, acknowledging their children as legitimate, joining in conveyances as spouses, and occupying the same dwelling place. *Bonds v. Foster,* 36 Tex. 68 (1871); O. Speer, *supra* § 5:89; 38 Tex. Jur.2d *Marriage* § 42 (1962).

■ In reviewing the record on the "no evidence" point, this court must consider only the evidence and reasonable inferences from the evidence, which, viewed in their most favorable light, supports the trial court's judgment, and must disregard all the evidence and inferences to the contrary. *Bounds v. Caudle,* 560 S.W.2d 925 (Tex. 1977); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1952); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 Texas L.Rev. 361 (1960).

When two persons not living together occasionally refer to each other as a spouse, these isolated references have been held, in some instances as a matter of law, not to have established a common-law marriage. *See Ex parte Threet,* 160 Tex. 482, 333 S.W.2d 361 (1960); *Drummond v. Benson,* 133 S.W.2d 154 (Tex.Civ.App.—San Antonio 1939, writ ref'd). Further, the act of one of the parties to an alleged common-law marriage in celebrating a ceremonial marriage with another person without having first obtained a divorce, tends to discredit the first relationship and to show that it was not valid. *Higgins v. Higgins,* 246 S.W.2d 271 (Tex.Civ.App.—Austin 1952, no writ); *Nye v. State,* 77 Tex.Cr.R. 389, 179 S.W. 100 (1915). Still, the circumstances of each case must be determined based upon its own facts. *Collora v. Navarro, supra* at 70; O. Speer, *supra* at § 2:3; Annot., *Judicial Declaration of Validity or Existence of Common-Law Marriage,* 92 A.L.R.2d 1102 (1963).

■ The record discloses several items of direct evidence which establish the fact of a prior undissolved common-law marriage between Patricio Claveria and Carolina Mendoza Claveria. Both Patricio and Carolina testified at the trial; and while they both denied they had ever been married, they

---

**3.** § 1.91. Proof of Certain Informal Marriages

(a) In any judicial, administrative, or other proceeding, the marriage of a man and woman may be proved by evidence that:

(1) a declaration of their marriage has been executed under Section 1.92 of this code; or

(2) they agreed to be married, and after the agreement they lived together in this state as husband and wife and there represented to others that they were married.

(b) In any proceeding in which a marriage is to be proved under Subsection (a)(2) of this section, the agreement of the parties to marry may be inferred if it is proved that they lived together as husband and wife and represented to others that they were married.

both also produced evidence of their common-law marriage. Some of their denials appear from the record to express the belief that the questions concerned a ceremonial marriage. In any event, there was evidence about the elements of a common-law marriage.

Patricio and Carolina both testified that they had lived together in 1967 in San Antonio for some two and a half months. A deposition that Patricio gave in a worker's compensation case in 1972, two years before his ceremonial marriage to Otha Faye, is also in the record. In that earlier court proceeding, he testified that he was married, and that his wife's name was Carolina. He testified that his wife was not employed, that she was a housewife. When asked if she had been a housewife for several years, he answered "About 16 years married." The evidence was not retracted nor otherwise explained.

Patricio and Carolina lived together in a house and lot in San Antonio that they purchased through the Veterans Administration. The grantees in the deed were Patricio Claveria and wife, Carolina Claveria. They executed a deed of trust to secure the payment of the purchase price in the amount of five thousand three hundred and fifty dollars, and they did so as husband and wife. The acknowledgment to the deed of trust was taken as husband and wife and there was a recital, in the quaint custom of the times, that Carolina was examined "privily and apart from her husband" when the document was explained to her. Carolina admitted that she had signed the document and had done so as a wife. This is direct evidence of the common-law marriage. *Red Eagle v. Cannon*, 201 Okl. 511, 208 P.2d 557 (1949).

Carolina testified that she had lived all her life in San Antonio. Patricio testified that he had lived only in San Antonio and Dallas. Certificates from the district clerks of Bexar and Dallas Counties show that there has been no divorce or annulment decree from either of those counties which involved Patricio or Carolina. *Caruso v. Lucius*, 448 S.W.2d 711 (Tex.Civ.App.—Austin 1970, writ ref'd n.r.e.); *Woods v. Hardware Mut. Casualty Co., supra*; Tex.Rev.Civ.Stat.Ann. art. 3731a § 5.

We have in this case direct evidence by Patricio that he and Carolina were husband and wife and that they lived together as such. We have the recorded deed in which both Patricio and Carolina represented to the Veterans Administration that they were married. We have the notarial acknowledgment by both of them that they were husband and wife. We have Patricio's and Carolina's solemn acknowledgment which was filed in the public records. There is, therefore, some evidence that the two lived together and held themselves out to the public as husband and wife. From the nature of that proof, their agreement to be married may also be inferred. Tex.Fam. Code Ann. § 1.91(b).

■ The law recognizes a common-law marriage, but a common-law divorce is unknown to Texas law. The marriage arises out of the state of facts; but once the common-law status exists, it, like any other marriage, may be terminated only by death or a court decree. Once the marriage exists, the spouses' subsequent denials of the marriage, if disbelieved, do not undo the marriage. *De Beque v. Ligon*, 292 S.W. 157 (Tex.Comm'n App.1927, holding approved).

■ Patricio also urges that the common-law marriage between him and Carolina was impossible, because Carolinia was already married in 1967 when the common-law marriage arose, having ceremonial married Luis Ochoa in 1945, some twenty-two years earlier. Carolina so testified, but the trial court, in this instance, determined that there was no existing impediment at the time of Carolina's and Patricio's common-law marriage. An alleged spouse's testimony is not conclusive. *Oldham v. McIver*, 49 Tex. 556 (1878); O. Speer, *supra* at § 1:35. The trial court could also rely upon the unrebutted presumption of the validity of the 1967 common-law marriage of Patricio and Carolina, Tex.Fam.Code Ann. § 2.01. *Texas Employers' Ins. Ass'n v. Elder, supra*. Carolina testified in this case that she and Luis Ochoa lived together two months, sep-

arated, and that she had not seen him since 1945. The long absence of Luis Ochoa for twenty-two years before the 1967 common-law marriage, without any proof that he was still alive at that time, gave rise to the presumption of his death. Tex.Rev.Civ. Stat.Ann. art. 5541; *Zurich Gen. Accident & Liability Ins. Co. v. Hill*, 251 S.W.2d 948 (Tex.Civ.App.—Texarkana 1952, writ ref'd n.r.e.); *see also* O. Speer, *supra* at § 1:45; 1 R. Ray Texas Law of Evidence § 83 (Texas Practice 3d ed. 1980).

The court of civil appeals was in error in its holding that there was no evidence of an undissolved common-law marriage between Patricio and Carolina and in rendering judgment that no such marriage arose. We reverse the judgment of the court of civil appeals and remand the cause to that court to pass upon the factual insufficiency and the great weight of the evidence points that were presented to that court but not decided.