Albert FLORES, Appellant,

v.

Peggy Ann FLORES, Appellee.

No. 10–92–135–CV.

Court of Appeals of Texas, Waco.

Feb. 3, 1993.

Rehearing Denied March 10, 1993.

（"649" at top right）

Rita H. McCorquodale, Madisonville, for appellant.

Anne M. Cofer, Cofer & Cofer, Inc., Bryan, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

### ORDER

PER CURIAM.

Appellee's motion for rehearing is granted. Our opinion and judgment dated December 30, 1992, are withdrawn and set aside, and the opinion and judgment dated February 3, 1993, are substituted therefor.

THOMAS, C.J., not participating.

### OPINION ON REHEARING

VANCE, Justice.

In this appeal we determine that the evidence to support a finding that a common law marriage existed between Peggy Ann Flores, Appellee, and Albert Flores, Appellant, is legally and factually insufficient under the amended version of section 1.91 of the Family Code. *See* TEX.FAM.CODE ANN. § 1.91 (Vernon 1975 & Supp.1992).

The County Court at Law Number Two of Brazos County found that a common law marriage existed and granted Peggy a divorce, custody of the minor child, and child support. Albert appeals alleging six points of error: (1) the evidence is legally and (2) factually insufficient to prove Peggy and Albert agreed to be married, (3) the evidence is legally and (4) factually insufficient to prove Peggy and Albert represented to others that they were married, (5) the 361st Judicial District Court of Brazos County had continuing jurisdiction, and (6)

the trial court erred in ordering child support payments of at least 25% of Albert's net resources.

## FACTS PRESENTED

Peggy and Albert were ceremonially married on July 18, 1987. A child, Joshua, was born to the couple on December 5, 1987. Albert sought a divorce, which was granted on March 9, 1989. Afterward, the couple continued to live together until November of 1990 when Albert moved out of the house and in with his girlfriend, Lisa. On January 1, 1991, Albert and Lisa were ceremonially married. Peggy filed for divorce on January 31 based on a common-law marriage, seeking managing conservatorship of the child and child support.

The record shows that Albert and Peggy had lived together before they were ceremonially married in 1987. The fact that Albert and Peggy continued to live together after their divorce is not disputed. Peggy testified that on one occasion after their divorce Albert introduced her as "my wife, Peggy." Although Peggy testified that she still considered herself to be married after the 1989 divorce, she told hospital personnel that she was single when she was admitted to a hospital. Albert testified that he did not intend to continue to be married. Irma Ortega, Peggy's employer, testified that she did not know of the 1989 divorce, that she thought they were married until she learned that Peggy had filed for divorce, that Albert would send gifts to Peggy at work with affectionate notes, that Peggy kept pictures of Albert and their child at work, but that she had never heard Albert or Peggy introduced to anyone else. Relatives of both parties testified that the relationship after the 1989 divorce continued much as it was before.

After the divorce, Albert and Peggy signed a lease together that did not specify their relationship. Albert continued to pay the rent and the utility, telephone, and other bills. He allowed Peggy to use his credit cards. They maintained a joint bank account and had sexual relations. Albert testified that Peggy had a copy of the divorce decree in 1989 and that "she asked me if I could stay with her and get herself back on her feet." He further testified that he moved back in with Peggy "to help her out." He also said that when he met Lisa he told her that he was "living with my wife and helping her out."

## ELEMENTS OF AN INFORMAL MARRIAGE

██ Section 1.91(a) of the Family Code provides:

(a) In any judicial, administrative, or other proceeding, the marriage of a man and woman may be proven by evidence that:

. . . . .

(2) they agreed to be married, and after the agreement they lived together in this state as husband and wife and there represented to others that they were married.

*Id.* § 1.91(a)(2). Thus, a party may establish a common-law marriage by proof of three necessary elements: (1) the parties agreed to be married, (2) after the agreement the parties lived together in this State, and (3) they represented to others in Texas that they were married. *Id.* The evidence must show that the parties intended to have a present, immediate, and permanent marital relationship and that they did in fact agree to be husband and wife. *Winfield v. Renfro*, 821 S.W.2d 640, 645 (Tex.App.—Houston [1st Dist.] 1991, writ denied). Although the three elements may occur at different times, until all three exist, there is no common law marriage. *Id.* at 646.

Prior to September 1, 1989, section 1.91(b) provided that the agreement to be married could be inferred if it were proved that the parties lived together as husband and wife and represented to others that they were married. Act of June 2, 1969, 61st Leg., R.S., ch. 888, § 1.91, 1969 Tex. Gen.Laws 2707, 2717. However, this provision was repealed in 1989, and section 1.91(b) now limits the time to sue to prove the marriage's existence. TEX.FAM.CODE ANN. § 1.91(b).

The legislature has also declared the public policy to be that a marriage is considered valid unless it is expressly made void by the Family Code, or made voidable by the Family Code and annulled. *Id.* § 2.01 (Vernon 1975). The most recent of two marriages is presumed to be valid as against the earlier marriage. *Id.* Thus, the marriage between Albert and Lisa is presumed to be valid, and Peggy bore the burden of proof on all of the elements of her alleged common-law marriage. *See id.*

## STANDARD OF REVIEW

 The court made no findings of fact. Thus, necessary findings are implied in support of the judgment. *See Roberson v. Robinson,* 768 S.W.2d 280, 281 (Tex. 1989). Implied findings may be challenged by legal and factual sufficiency points the same as jury findings and a trial court's findings of fact. *Id.*

 In assessing a no-evidence point, we view the evidence in the light most favorable to the findings, considering only the evidence and inferences which support the findings and rejecting the evidence and inferences contrary to the findings. *See Miller v. Riata Cadillac,* 517 S.W.2d 773, 777 (Tex.1974). If there is any evidence of probative force to support the findings, they are binding on us. *See Behring Intern. v. Greater Houston Bank,* 662 S.W.2d 642, 648 (Tex.App.—Houston [1st Dist.] 1983, writ dism'd). A no-evidence point must, and may only, be sustained when the record discloses one of the following: (a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or rules of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; (d) the evidence established conclusively the opposite of the vital fact. *Juliette Fowler Homes, Inc. v. Welch Associates, Inc.,* 793 S.W.2d 660, 666 n. 9 (Tex. 1990) (citing Robert W. Calvert, *"No Evidence" & "Insufficient Evidence" Points of Error,* 38 Tex.L.Rev. 361 (1960)). Evidence is no more than a scintilla when it is "so weak as to do no more than create a

mere surmise or suspicion of [the fact's] existence...." *Seideneck v. Cal Bayreuther Assoc.,* 451 S.W.2d 752, 755 (Tex. 1970).

 When the complaining party challenges the factual sufficiency of the evidence to support a finding that favors the party who had the burden of proof on that finding, the reviewing court must sustain the finding unless all the evidence, both for and against the finding, is so weak or insufficient that the finding is manifestly unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

## AGREEMENT TO BE MARRIED

Albert's first and second points assert that the evidence is legally and factually insufficient to support an implied finding that he and Peggy agreed to be married, the first prong of section 1.91(a)(2). *See* TEX.FAM.CODE ANN. § 1.91(a)(2).

We find three cases decided since the amendment. *Winfield v. Renfro,* decided after the change in section 1.91(b), held that evidence of an agreement to be married may be inferred from cohabitation and representations. *Winfield,* 821 S.W.2d at 645–46. The opinion does not discuss the amendment. The Beaumont Court of Appeals rejected a contention that section 1.91 as amended requires "direct and indisputable evidence that both appellant and appellee made an outright statement that 'we agree to be married,'" saying that such an interpretation would be tantamount to an abolition of common-law marriages in Texas. *Russell v. Russell,* 838 S.W.2d 909, 913 (Tex.App.—Beaumont 1992, writ granted). The court further states that "regardless of the amendment of sec. 1.91(b), an agreement to be married may be inferred from direct or circumstantial evidence which preponderates that the parties lived together in the State of Texas and did, in Texas, represent to others that they were married." *Id.* In *Lorensen v. Weaber,* the Dallas Court of Appeals held the evidence of a common-law marriage to be insufficient, saying, "While it is unclear how specific the evidence of an agreement to be married must be after the statutory provi-

sion allowing inference of an agreement was repealed, it is clear that such evidence does not exist in this case." *Lorensen v. Weaber*, 840 S.W.2d 644, 647 (Tex.App.—Dallas 1992, writ granted).

We agree with Professor McKnight that non-marital cohabitation for extended periods of time is far more common than it once was and that evidence of a tacit agreement to marry should be weighed more carefully than in the past. *See* Joseph W. McKnight, *Family Law: Husband and Wife*, 44 Sw.L.J. 2–3 (1990). Occasional references to "my wife" or "my husband" do not prove a tacit agreement to be married without corroboration. *Id.* If the statement is made in a self-serving context—such as a deponent's reference to his marital situation in order to show a stable family relationship, an application to a lender by one seeking a loan, or by the person seeking to admit himself or herself to a hospital—it may not have great weight. *Id.* On the other hand, a forthright assertion of marriage with the consequences of liability—such as when an alleged spouse seeks admission of the other to a hospital or the filing of an joint income tax return—may be far more probative of such an agreement. *Id.* Testimony indicating the state of mind of either party that a marriage did not exist during the cohabitation should have greater weight than before the amendment to section 1.91. *Id.*

 Unless a statute is ambiguous, we must follow its clear language and seek the intent of the legislature as found in the plain and common meaning of the words and terms used. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 352 (Tex.1990); *RepublicBank Dallas, N.A. v. Interkal, Inc.*, 691 S.W.2d 605, 607 (Tex.1985). If the statute is clear and unambiguous, extrinsic aids and rules of statutory construction are inappropriate, and the provisions should be given their common everyday meaning. *Cail v. Service Motors, Inc.*, 660 S.W.2d 814, 815 (Tex.1983).

 Section 1.91(a) uses clear language to require "evidence ... that they agreed to be married." Generally, any ultimate fact may be established by circum-

stantial evidence as well as by direct evidence. *Employers Mutual Liability Ins. Co. v. Strother*, 347 S.W.2d 957, 958 (Tex. Civ.App.—Waco 1961, no writ). An ultimate fact may be conclusively shown by wholly circumstantial evidence. *Prudential Ins. Co. v. Krayer*, 366 S.W.2d 779, 780 (Tex.1963). Thus, we conclude that the plain meaning of the statute, as it now exists, allows proof of an agreement to be married by direct evidence, by a combination of direct and circumstantial evidence, or by wholly circumstantial evidence.

## LEGAL–SUFFICIENCY REVIEW

 Peggy presented no direct evidence of an agreement to be married. Like the Dallas Court, we are unclear how specific the evidence of an agreement to marry must be after the statutory provision allowing inference of an agreement was repealed; but, considering only the evidence and inferences that support the implied finding and rejecting the evidence and inferences contrary to the implied finding, we believe that such evidence does not exist in this case. *See Lorensen*, 840 S.W.2d at 647; *Miller*, 517 S.W.2d at 777. We believe this to be particularly true in light of the expressed public policy creating a presumption that Albert's ceremonial marriage to Lisa is valid. *See* TEX.FAM. CODE ANN. § 2.01. Additionally, the act of one of the parties to an alleged common-law marriage in celebrating a ceremonial marriage with another person, without having first obtained a divorce, tends to discredit the first relationship and to show that it was not valid. *Estate of Claveria v. Claveria*, 615 S.W.2d 164, 166 (Tex.1981). Thus, in light of Peggy's failure to produce any direct evidence of an agreement or any evidence from which an agreement might be inferred, we hold that there is a complete absence of evidence of a vital fact, *i.e.*, an agreement to marry, and that the evidence is legally insufficient to support the implied finding. *See Juliette Fowler Homes, Inc.*, 793 S.W.2d at 666 n. 9. Accordingly, we sustain point one.

## FACTUAL–SUFFICIENCY REVIEW

 Having sustained Albert's first point, the no-evidence point, we also sustain point two, the factual-insufficiency point. We sustain it because, considering all of the evidence for and against the implied finding of an agreement to marry, the evidence in support of the finding is so weak and insufficient that the finding is manifestly unjust. *See Cain,* 709 S.W.2d at 176.

We make this determination even though we understand that if the Supreme Court finds that we erred in sustaining the no-evidence point, it will imply that we would hold the evidence to be factually insufficient and remand the case for a new trial. *See Great American Insurance Co. v. Langdeau,* 379 S.W.2d 62, 74 (Tex.1964). However, we do not know if the rule of *Langdeau* can be reconciled with the requirements of *Pool v. Ford Motor Co.,* 715 S.W.2d 629 (Tex.1986). To reverse the court's judgment for factual insufficiency and comply with *Pool,* we must "detail the evidence relevant to the issue in consideration and clearly state why the jury's finding is so factually insufficient or so against the great weight of the evidence as to be manifestly unjust; why it shocks the conscience; or clearly demonstrates bias." *See id.* at 635.

There is no direct evidence of an agreement to marry. The only arguable evidence is that Albert and Peggy continued to live together; Albert's introduction of Peggy once after the divorce as "my wife, Peggy" and his reference to "living with my wife and helping her out"; Albert's gifts to Peggy after the divorce with affectionate notes; the lease that Albert and Peggy signed which did not specify that they were married; Albert's payment of rent, utility, and other bills; and the facts that they maintained a joint bank account and had sexual relations after the divorce. In our view, none of these compel the conclusion that these parties, who had been married and divorced, had *agreed* to be married again. The evidence to the contrary is that Peggy held herself out as a single person upon being admitted to a hospital, Albert's testimony that he did not intend to continue to be married and his testimony that Peggy asked him to stay with her "to help her out," and Albert's later ceremonial marriage to another person. Considering the 1989 amendment to section 1.91, the fact that Albert denied an intention to be married, Peggy's representation to others in a meaningful context that she was single, Albert's later marriage to Lisa, and the public-policy presumption that his marriage to Lisa is valid, we find that the evidence to support the implied finding of an agreement to be married is so weak and insufficient as to be manifestly unjust. *See Pool,* 715 S.W.2d at 635; *Cain,* 709 S.W.2d at 176; TEX.FAM.CODE ANN. § 1.91. We sustain point two.

## REPRESENTATIONS TO OTHERS

 Albert's third and fourth points assert that the evidence is legally and factually insufficient to support an implied finding that he and Peggy represented to others that they were married—the third prong of section 1.91(a)(2). *See* TEX.FAM. CODE ANN. § 1.91(a)(2). This requirement of "represented to others" is the equivalent of the common-law requirement of "holding out." *Winfield,* 821 S.W.2d at 648.

## LEGAL–SUFFICIENCY REVIEW

The only direct evidence of a holding out is Peggy's testimony that Albert introduced her once after the divorce as his wife and told Lisa that he was "living with my wife and helping her out." An occasional use of the reference "wife" or "husband" cannot support a finding of a holding-out. *Ex parte Threet,* 160 Tex. 482, 333 S.W.2d 361, 364 (1960); *Gary v. Gary,* 490 S.W.2d 929, 934 (Tex.Civ.App.—Tyler 1973, writ ref'd n.r.e.). We believe that this is particularly true when the parties have been married and divorced prior to the making of an ambiguous statement such as made here. The only other evidence that might be considered as representations to others are the lease that was introduced into evidence and the fact that Peggy and Albert maintained a joint bank account. As noted, the lease does not specify their relation-

ship. None of the bank-account documents or checks were introduced into evidence. Thus, the evidence that Albert and Peggy represented to others that they were married is no more than a mere scintilla and is legally insufficient to support the implied finding. *See Juliette Fowler Homes, Inc.,* 793 S.W.2d at 666 n. 9. Accordingly, we sustain point three.

## FACTUAL–SUFFICIENCY REVIEW

Having sustained Albert's third point, the no-evidence point, we also sustain point four, the factual-insufficiency point. We sustain it because, considering all of the evidence for and against the implied finding of representations to other, the evidence in support of the finding is so weak and insufficient that the finding is manifestly unjust. *See Cain,* 709 S.W.2d at 176.

As stated above, we make this determination to satisfy the rule of *Pool,* even though the Supreme Court may imply that we would hold the evidence to be factually insufficient and remand the case for a new trial. *See Pool,* 715 S.W.2d at 635; *Great American Insurance Co.,* 379 S.W.2d at 74.

The only evidence of a holding out is Peggy's testimony that Albert introduced her once after the divorce as his wife. The only other evidence that might be considered as representations to others are the lease that was introduced into evidence that does not specify their relationship and the fact that Peggy and Albert maintained a joint bank account, the style of which is unknown. The evidence to the contrary is Irma Ortega's testimony that she never heard them introduced to anyone else, Peggy's representation that she was a single person upon being admitted to a hospital, Albert's testimony that he did not intend to continue to be married and his testimony that Peggy asked him to stay with her "to help her out," and Albert's later ceremonial marriage to another person. Considering the lack of direct evidence of representations to others that they had remarried, Peggy's representation in a meaningful context that she was single, Albert's testimony that he did not intend to be married,

Albert's later marriage to Lisa and the public-policy presumption that his marriage to Lisa is valid, we find that the evidence in support of the implied finding that the parties represented to others that they had remarried is so weak and insufficient as to make the finding manifestly unjust. *See Pool,* 715 S.W.2d at 635; *Cain,* 709 S.W.2d at 176. We sustain point four.

## CONTINUING JURISDICTION OF ANOTHER COURT

Albert's fifth point asserts that, because the 361st District Court of Brazos County had previously entered a decree of divorce of Albert's and Peggy's ceremonial marriage and therefore had continuing jurisdiction, the court should not have entertained Peggy's claims. The court made a finding that no community property, other than personal effects, had been accumulated by the parties. Thus, we are unable to ascertain what relief Peggy sought from the court that she could not have obtained through a motion to modify filed in the original divorce proceeding in the 361st District Court. Nevertheless, she had a right to assert her cause of action seeking to establish an informal marriage under section 1.91, and the Family Code recognizes an exception to continuing jurisdiction if the parties have remarried each other. *See* TEX.FAM.CODE ANN. §§ 1.91, 11.05(a), (f). Peggy's point that the plea to the jurisdiction was not timely filed is not well taken; a question of jurisdiction is fundamental and can be raised at any time. *See Johnson v. Pettigrew,* 786 S.W.2d 45, 46 (Tex.App.—Dallas 1990, no writ). We overrule point five; but because we have found that Peggy failed to establish an informal marriage, the court's other orders concerning personal property and the conservatorship, support, and visitation of the child cannot stand.

We reverse the judgment, and render judgment that Peggy Ann Flores take nothing by her suit. Because of our disposition, we do not reach the point of error asserting that the court erred in setting

child support payments of 25% of Albert's net resources.