02-11-276-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00276-CV


 
 
 Alfonso Garcia
 
 
  
 
 
 APPELLANT
 
 
 
 
 V.
  
 
 
 
 
 Carmen
 Garcia
 
 
  
 
 
 APPELLEE
 
 


----------

FROM THE 324th
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

Introduction

Appellant
Alfonso Garcia appeals the trial court’s finding of an informal marriage[2] between him and appellee
Carmen Garcia and its division of the community property.  We affirm.

Factual
Background

The
Garcias divorced in 1989 but resumed living together in September 1990.  The
couple continued living together until November 2008.  Throughout this period,
Alfonso visited Mexico every year.  Around 2003, during one of his visits to
Mexico, he met a woman named Maria Sanchez.  Alfonso began a relationship with
Sanchez but never told Carmen about her.

In
February 2008, Alfonso finally confessed to Carmen that he had met someone in
Mexico.  Alfonso said that Sanchez was pregnant, and he wanted to marry her. 
Alfonso and Carmen continued to live together.  In July 2008, Alfonso went back
to Mexico and married Sanchez in a civil court.[3] 
When he returned, Carmen tried to prevent him from returning to their home, but
he told her that he had the legal right to do so.  Alfonso continued living
with Carmen until November 2008, when he left again for Mexico.  Alfonso and
Sanchez had a Catholic wedding ceremony on December 31, 2008, in Mexico. 
Alfonso returned alone to Texas in January 2009, but this time Carmen refused
to let him in the house.  She filed for divorce on February 26, 2009, on the
grounds of adultery and conflict of personalities.

The
couple owned three Texas properties: (1) 3414 Strong Avenue; (2) 1207 Minden
Street;[4]
and (3) 1006 East Cantey Street.  According to testimony, from 1990 to 1996
they lived at the Strong Avenue property.  In 1996, the couple purchased the
property on Minden Street; after renovations, they moved into that home and
resided there from 1999 until their separation in 2008.  Alfonso used the house
on East Cantey Street as rental property.[5]
 Carmen testified that Alfonso retained the $500-a-month rental payments.  At
the time Carmen filed for divorce, Alfonso was living at the Strong Avenue property. 
Prior to the hearing, Alfonso transferred two of these properties that belonged
to the community estate to his nephew, Mario Martinez, without Carmen’s
permission.

During
the trial, there was some dispute regarding property purchased by Alfonso in
Mexico.  Carmen testified that from 1994 through 1996 Alfonso purchased two
lots in Mexico and that he was paying taxes on them.  However, Alfonso
testified that he had never purchased property in Mexico, but had inherited
property from his father that belonged collectively to Alfonso and his
siblings.

The
trial court found that the Garcias were married on or about September 1, 1990,
and ceased living together on or about November 27, 2008.  Further, the trial
court found that the couple had an informal marriage during the entirety of
that time.  The trial court found that Alfonso had committed adultery and
granted the divorce.  It also ordered the properties transferred back to
Alfonso and Carmen jointly so that they may be divided at a later hearing.

At
the final hearing for the division of the property, the trial court awarded
Carmen all of the property associated with the Minden Street address and the
property located on East Cantey Street.  Alfonso was awarded the property on
Strong Avenue.  Because there was no proof of any property purchased by Alfonso
in Mexico, the trial court found that Alfonso was entitled to any land
inherited from his father; however, any land purchased by Alfonso would be
awarded to Carmen.  Alfonso filed a motion for a new trial arguing that the
disproportionate division of property was an abuse of discretion, but he did
not challenge the trial court’s finding that there was an informal marriage.[6]  Alfonso then
filed this appeal.

Discussion

A.  Common
Law Marriage

In
his first issue, Alfonso argues that the evidence is legally and factually
insufficient to support the trial court’s finding that he and Carmen were
informally married.  However, in family law cases, the abuse of discretion
standard of review overlaps with the traditional sufficiency standard of
review; thus, legal and factual insufficiency are not independent reversible
grounds of error but are relevant factors in assessing whether the trial court
abused its discretion.  Neyland v. Raymond, 324 S.W.3d 646, 649 (Tex.
App.—Fort Worth 2010, no pet.); Boyd v. Boyd, 131 S.W.3d 605, 611 (Tex. App.—Fort
Worth 2004, no pet.).

In a
bench trial in which no findings of fact or conclusions of law are filed, the
trial court’s judgment implies all findings of fact necessary to support it.  Pharo
v. Chambers County, 922 S.W.2d 945, 948 (Tex. 1996); In re Estate of
Rhea, 257 S.W.3d 787, 790 (Tex. App.—Fort Worth 2008, no pet.).  But when a
reporter’s record is filed, these implied findings are not conclusive, and an
appellant may challenge them by raising issues challenging the sufficiency of
the evidence.  BMC Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 795
(Tex. 2002); Estate of Rhea, 257 S.W.3d at 790.

Accordingly,
to determine whether there has been an abuse of discretion because the evidence
is legally or factually insufficient to support the trial court’s decision, we determine
first whether the trial court had sufficient evidence upon which to exercise
its discretion, and then whether the trial court erred in its application of
that discretion.  Boyd, 131 S.W.3d at 611.  The applicable
sufficiency review comes into play with regard to the first question.  Id.
 We then proceed to determine whether, based on the elicited evidence, the
trial court made a reasonable decision.  Id.; see also Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 241–42 (Tex. 1985) (stating
that, to determine whether a trial court abused its discretion, we must decide
whether the trial court acted without reference to any guiding rules or
principles; in other words, whether the act was arbitrary or unreasonable), cert.
denied, 476 U.S. 1159, 106 S. Ct. 2279, (1986).

1.  Legal
and Factual Sufficiency of the Evidence

Evidence
is legally insufficient only when (1) the record discloses a complete absence
of evidence of a vital fact; (2) the court is barred by rules of law or of
evidence from giving weight to the only evidence offered to prove a vital fact;
(3) the evidence offered to prove a vital fact is no more than a mere
scintilla; or (4) the evidence establishes conclusively the opposite of a vital
fact.  Uniroyal Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex.
1998), cert. denied, 526 U.S. 1040 (1999); Robert W. Calvert, “No
Evidence” and “Insufficient Evidence” Points of Error, 38 Tex. L. Rev. 361,
362–63 (1960).  In determining whether there is legally sufficient evidence to
support the finding under review, we must consider evidence favorable to the
finding if a reasonable fact finder could and disregard evidence contrary to
the finding unless a reasonable fact finder could not.  Cent. Ready Mix
Concrete Co. v. Islas, 228 S.W.3d 649, 651 (Tex. 2007); City of Keller
v. Wilson, 168 S.W.3d 802, 807, 827 (Tex. 2005).

When
reviewing an assertion that the evidence is factually insufficient to support a
finding, we set aside the finding only if, after considering and weighing all
of the evidence in the record pertinent to that finding, we determine that the
credible evidence supporting the finding is so weak, or so contrary to the
overwhelming weight of all the evidence, that the answer should be set aside
and a new trial ordered.  Pool v. Ford Motor Co., 715 S.W.2d 629, 635
(Tex. 1986) (op. on reh’g); Cain v. Bain, 709 S.W.2d 175, 176 (Tex.
1986); Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965).  When
conducting a factual sufficiency review, a court of appeals must not merely
substitute its judgment for that of the trier of fact.  Golden Eagle
Archery, Inc. v. Jackson, 116 S.W.3d 757, 761 (Tex. 2003).  The trier of
fact is the sole judge of the credibility of witnesses and the weight to be
given to their testimony.  Id.

Under
section 2.401 of the family code, an informal marriage is established when (1)
there is an agreement to be married; (2) the couple is living together as
husband and wife; and (3) they are representing to others that they are
married.  Tex. Fam. Code Ann. § 2.401(a)(2) (West 2006).  An informal marriage
does not exist until all three elements occur.  Flores v. Flores, 847
S.W.2d 648, 650 (Tex. App.—Waco 1993, writ denied) (holding that all
three elements can come about at different times, but until all three occur,
there is no informal marriage).

2. Agreement
to be Married and Living Together as Husband and Wife

To
establish an agreement to be married, “the evidence must show the parties
intended to have a present, immediate, and permanent marital relationship and
that they did in fact agree to be husband and wife.”  Small v. McMaster,
352 S.W.3d 280, 283 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (citing Winfield
v. Renfro, 821 S.W.2d 640, 645 (Tex. App.—Houston [1st Dist.] 1991, writ
denied)).  The agreement to be married may be established by direct or
circumstantial evidence, and the testimony of one of the parties to the
marriage constitutes direct evidence that the parties agreed to be married.  See
Eris v. Phares, 39 S.W.3d 708, 714 (Tex. App.—Houston [1st Dist.] 2001,
pet. denied) (citing Collora v. Navarro, 574 S.W.2d 65, 70 (Tex.
1978)).  Evidence of an agreement may be inferred from cohabitation and
representations by the parties.  Id.

Alfonso
argues that Carmen unilaterally intended to be informally married to him once
they resumed living together in 1990.  He claims that he and Carmen were
divorced on January 11, 1989, and prior to the current divorce proceeding, they
were living together, but not as husband and wife.  At trial, Alfonso
repeatedly stated that he was not married to Carmen, that they were already
divorced, and that their current relationship was not a marriage.  When he was
asked if he was married to Carmen, he responded, “No.  Legally, I’ll say no.” 
However, when asked if he and Carmen slept together in the same room and were
living together as husband and wife, Alfonso answered, “Yes.”

Carmen
testified that she was married to Alfonso beginning in September 1990 when they
resumed living together.  She provided evidence that they had cohabitated for eighteen
years and that they represented to third parties that they were married by
filing joint tax returns and signing mineral leases as husband and wife.  An
inference to Carmen and Alfonso’s agreement to marry can be evidenced by their living
together and their representations to others from 1990 until 2008.  See Eris,
39 S.W.3d at 714.  Carmen also testified that Alfonso told her grandchildren
that he and Carmen were already married and did not need to be married again in
the church.  Carmen’s testimony is direct evidence that the couple agreed to be
married and lived together as husband and wife.  See id.  Alfonso
corroborated her evidence when he answered affirmatively that they lived
together as husband and wife.  See Tex. Fam. Code Ann. § 2.401(a)(2). 
We therefore hold that there is evidence that the couple agreed to be married. 
See, e.g., In re Marriage of Hallgarth, No. 07-01-0013-CV, 2001
WL 574833, at *2 (Tex. App.—Amarillo May 29, 2001, no pet.) (mem. op., not
designated for publication) (holding that testimony by wife that husband asked
her to get married together with “the evidence concerning their 15 year period
of cohabitation, their use of the same last name, their representations to
third parties that they were married, and the statement to hospital officials
by [the husband] that [the wife] was his wife to gain her admission into the
hospital” was more than a scintilla of evidence that they had agreed to be
married).

3.  Representation
to Others as a Married Couple

The
statutory requirement of “represent[ing] to others” is synonymous with the old
judicial requirement of “holding out to the public.”  Winfield, 821
S.W.2d at 648.  “Holding out” may be established by the conduct and
actions of the parties; spoken words are not necessary to establish
representation as husband and wife.  Id.  Carmen argues that the
evidence of their cohabitation and representation to others as husband and wife
is proof that they held themselves out to the public as married.  The couple
lived together for approximately eighteen years, Alfonso assisted Carmen in
adopting and raising her grandchildren, Alfonso and Carmen were registered as a
family at their church, and the couple was listed as husband and wife at the
children’s school.

The
couple also maintained a joint checking account to which both parties had full
access, and they both deposited and withdrew funds from the account.  Although
Carmen did not provide any documentary evidence of tax returns between 1990 and
2003, she did provide evidence of a 2003 and 2007 tax return, on which she and
Alfonso were listed as married.  She explained that their return was audited in
2003 and that she did not have all the returns before that.  Carmen testified
that they filed their taxes jointly the entire time they lived together, and
Alfonso confirmed that they filed joint tax returns in 2007 and 2008.  In 2008,
the couple received a tax refund which was issued to them as husband and wife
and was deposited in the joint checking account.  Further, the couple signed a
mineral lease for one of the properties and on it listed themselves as husband
and wife.

Alfonso
asserts that under Flores, his “statements” to the government that he
was married were strictly for self-serving purposes.  Flores states:

Occasional references
to “my wife” or “my husband” do not prove a tacit agreement to be married
without corroboration. If the statement is made in a self-serving context—such
as a deponent’s reference to his marital situation in order to show a stable
family relationship, an application to a lender by one seeking a loan, or by
the person seeking to admit himself or herself to a hospital—it may not have
great weight.

847
S.W.2d at 652.

Alfonso
claims that he only filed jointly because he would have to pay less in taxes. 
Thus, under Flores, his statements to the government should not have
much weight in determining whether he and Carmen were married.  See Flores,
847 S.W.2d at 652.  But Flores also states that “a forthright assertion
of marriage with the consequences of liability—such as . . . the filing of
[a] joint income tax return—may be far more probative of such an agreement.”  Id. 
Alfonso and Carmen filed joint tax returns and signed an oil, gas, and mineral
lease as husband and wife.  These assertions, with their consequences of
liability, provide strong corroboration that Alfonso and Carmen were married.  Flores
is further distinguishable because in that case, the wife did not
corroborate her claim of marriage with any evidence.  Id.  (“Occasional
references to ‘my wife’ or ‘my husband’ do not prove a tacit agreement to be
married without corroboration.”) (emphasis added).  In this case, Carmen
corroborated Alfonos’s representations with evidence such as the tax returns
and the lease.

4.  Legal
Presumption of Validity of Most Recent Marriage

Alfonso
claims that the strongest evidence that he did not consider himself married to
Carmen was his marriage to Sanchez in Mexico on December 31, 2008.  The Texas
Family Code provides that the most recent marriage is presumed valid against
each prior marriage until the person who asserts the validity of the prior
marriage proves that validity.  Tex. Fam. Code Ann. § 1.102 (West 2006).  When
one party celebrates a ceremonial marriage with another person, without
obtaining a divorce, that marriage tends to discredit the first relationship
and its validity.  Estate of Claveria v. Claveria, 615 S.W.2d 164, 165
(Tex. 1981).  Still, the “circumstances of each case must be determined based
upon its own facts,” and the presumption is not conclusive, but can be rebutted
by evidence that negates dissolution of the previous marriage.  See id.
at 166; Bailey-Mason v. Mason, 122 S.W.3d 894, 898 (Tex. App.—Dallas
2003, pet. denied).  Informal marriage, like any other marriage, may be
terminated only by death or a court decree; once the marriage exists, a
spouse’s subsequent denials of the marriage do not undo the marriage.  See
Claveria, 615 S.W.2d at 167.  Once evidence is presented that negates the
previous marriage’s dissolution, the fact finder must determine whether the
presumption of validity has been overcome.  Bailey-Mason, 122 S.W.3d at
898.

Carmen
produced evidence that she and Alfonso filed taxes together, signed mineral
leases as husband and wife, and had a joint bank account.  Carmen also testified
that Alfonso lived with her after he had been married to Sanchez by a civil
court in July 2008 and that he tried to come back to live with her in January
2009, six weeks after he had ceremonially married Sanchez.  Further, Alfonso
testified that he never planned on living with Sanchez in Mexico, did not tell
Carmen about Sanchez for several years until Sanchez became pregnant in 2008,
and was leading a “double life” because he did not agree with Carmen allowing
her son to make decisions about Carmen’s finances.  When testifying about his
marriage in Mexico to Sanchez, he was asked,

Q.   Do
you think that what you did is okay?

A.   I
know it is not.

Q.   Why?

A.   I
have my reasons.

He
testified that he transferred title of the properties to his nephew because he
was afraid that if Carmen divorced him again, she would leave him with nothing.[7]

More
than a scintilla of evidence exists that Alfonso and Carmen had entered into an
informal marriage.  See Uniroyal, 977 S.W.2d at 334.  And viewing all of
the evidence, we cannot say that the evidence supporting the finding is so
weak, or the weight of the contrary evidence so overwhelming, that the trial
court’s ruling should be set aside.  See Pool, 715 S.W.2d at 635. 
Because Carmen demonstrated that she and Alfonso had an informal marriage and
that the marriage had not been terminated when Alfonso married Sanchez, the
trial court was free to find that Carmen had overcome the presumption of
validity of Alfonso’s ceremonial marriage to Sanchez.  See Bailey-Mason,
122 S.W.3d at 898.  The evidence that Alfonso knew his marriage to Sanchez was
not right, that he never intended to live with her, and that he returned to
Carmen even after marrying Sanchez in a church is both legally and factually
sufficient to support the trial court’s finding that the presumption of
validity of the ceremonial marriage was overcome.  The evidence is also legally
and factually sufficient to support the trial court’s finding that the Garcias
were informally married.  Thus, the trial court did not abuse its discretion by
finding an informal marriage between Alfonso and Carmen beginning in September
1990.  See Boyd, 131 S.W.3d at 611.  We overrule Appellant’s
first issue.

B.  Property
Division

In
his second issue, Alfonso claims that the trial court abused its discretion by
dividing the property in the manner that it did because: (1) there was
insufficient evidence to show whether the nature of the property was community
or separate; and (2) the 72% to 28% division of the marital estate division was
not justified by any guiding principle.

A
trial court has broad discretion in making its “just and right” division of the
marital estate.  Tex. Fam. Code Ann. § 7.001 (West 2006); Murff v. Murff,
615 S.W.2d 696, 698–99 (Tex. 1981).  Absent a clear abuse of discretion, we
will not disturb that division.  Bell v. Bell, 513 S.W.2d 20, 22 (Tex.
1974); Boyd v. Boyd, 67 S.W.3d 398, 406 (Tex. App.—Fort Worth 2002, no
pet.).

1.  Community
Property vs. Separate Property

Under
sections 3.001 and 3.002 of the family code, community property is the
property, other than any separate property, acquired by either spouse during
the marriage; separate property consists of property owned or claimed by the
spouse prior to marriage.  Tex. Fam. Code Ann. §§ 3.001(1), 3.002 (West 2006). 
Texas Family Code section 3.003 states that there is a presumption that
property acquired by either spouse during marriage is community property, and
the degree of proof necessary to establish that property is separate property
is clear and convincing evidence.  Id. § 3.003 (West 2006).  When the
character of the property is in doubt, Texas courts have held in favor of the
community estate.  Ellebracht v. Ellebracht, 735 S.W.2d 658, 659 (Tex.
App.—Austin 1987, no writ).

Alfonso
argues that there was no evidence of when the properties were purchased; thus,
the trial court abused its discretion in finding that the properties were
community property subject to division.  However, Alfonso testified that as a
result of his first divorce from Carmen, he was left without anything.  He also
did not present any evidence to rebut Carmen’s testimony about the purchase of
the properties during their marriage.  To discharge the burden imposed by
section 3.003 of the family code, Alfonso must have traced and clearly
indentified the property that he claimed was separate.  See Tarver v. Tarver,
394 S.W.2d 780, 783 (Tex. 1965) (holding that the statute imposes the burden on
one asserting property is not community to prove the contrary by satisfactory
evidence).  Alfonso did not present any evidence that the properties were not
community property, nor did he plead that he owned separate property.  Alfonso
failed to discharge his burden under the statute and thus did not overcome the
presumption of community property.  See Tex. Fam. Code Ann. § 3.003.

2.  Marital
Estate Division

Under
section 7.001 of the family code, the trial court must divide the marital
estate in a manner the trial court deems just and right while considering the
rights of both parties.  Id. § 7.001.  In making an equitable division,
the court should consider all of the surrounding circumstances, and the
division need not be equal as long as it is not so disproportionate as to be
inequitable, and the circumstances justify awarding more than one-half to one
spouse.  Naguib v. Naguib, 137 S.W.3d 367, 378 (Tex. App.—Dallas 2004,
pet. denied).  Some of the factors the trial court can consider in dividing the
marital estate include the spouses’ ages, earning power, capacities, and
abilities; fault—such as adultery or cruelty—in the breakup of the marriage;
relative financial condition and obligations; fraud on the community and
wasting of community assets; and the nature of the property.  See Neyland v.
Raymond, 324 S.W.3d 646, 651 (Tex. App.—Fort Worth 2010, no pet.); Schaban-Maurer
v. Maurer-Schaban, 238 S.W.3d 815, 820–21 (Tex. App.—Fort Worth 2007, no
pet.), disapproved of on other grounds by Iliff v. Iliff, 339
S.W.3d 74, 83 (Tex. 2011).

In
the divorce decree, the trial court awarded Alfonso the Strong Avenue property
and his car and truck.  The trial court awarded Carmen the Minden and East Cantey
properties, her car, and

[a]ny and all
community property in Mexico, save and except all separate property inherited
by [Alfonso] from his father, except for that property in [Alfonso’s] father’s name
that may have been wrongfully transferred to [Alfonso’s] father by [Alfonso]
with intent to defraud [Carmen] and deprive her of such community property.

The
Strong Avenue property was estimated to be worth $27,800.  The Minden property
was estimated to be worth about $38,000.  The East Cantey property was
estimated to be worth $20,600.  There was no testimony regarding the value of
the cars; however, both parties acknowledged that the truck was not in working
condition.[8]

Carmen
requested a disproportionate share of the property because Alfonso committed
adultery and transferred properties belonging to the community estate to a
relative to prevent Carmen from claiming them in the divorce.  Carmen’s other
grounds in her divorce petition were Alfonso’s conduct that led to the breakup
of the marriage; age of the spouses; earning power, business opportunities,
capacities and abilities of the spouses; need for support; and attorney’s fees
to be paid.

Alfonso
testified that he had a relationship with Sanchez since 2003, and he did not
tell Carmen about his relationship until February 2008 when he found out Sanchez
was pregnant.  Alfonso married Sanchez in December 2008 before he was separated
from Carmen, which led to the breakup of the marriage.  Further, there was
testimony that Alfonso committed fraud on the community estate when he
transferred the property on Strong Avenue and East Cantey Street to his nephew
so Carmen could not claim them.  Alfonso was ordered to have the properties
transferred back prior to the subsequent hearing dividing the property.  According
to Carmen’s testimony, Alfonso also received approximately $5,000 from rental
of the East Cantey property that he did not deposit in the joint account.  Carmen
has two granddaughters that she is raising, and prior to their divorce, Alfonso
assisted in their care.  There was also testimony regarding the jobs that
Carmen and Alfonso held and the wages that they earned.  Carmen testified that her
job was the main source of income for the family and that she had worked
consistently for two and a half years at the same job, earning about $21,000 a
year.  She testified that Alfonso never kept a job for very long and would frequently
quit positions or get laid off.  Alfonso testified that he made ten dollars an
hour at his last job, which he held for three weeks.  Before that, he earned
twelve dollars an hour.  He once held a job for three months working for
fourteen dollars an hour, but he never held a job for longer than three months.

Alfonso
claims that the division of community property was 72% to Carmen and 28% to
him.  To arrive at those percentages, Alfonso necessarily had to include the
value of any property in Mexico that he had purchased.  However, Alfonso repeatedly
denied the existence of any property in Mexico.[9] 
The division of the Texas properties, without including the value of the
automobiles and other personal property, is closer to 68% to Carmen, and 32% percent
to Alfonso.

The
trial court had sufficient evidence to exercise its discretion in dividing the
couple’s property.  See Neyland, 324 S.W.3d at 649.  Carmen
testified that her job was the couple’s major source of income, despite the
fact that Alfonso, had he maintained consistent employment, had a greater
earning capacity, and Alfonso did not dispute that he changed jobs, at minimum,
every three months.  See Hailey v. Hailey, 176 S.W.3d 374, 382
(Tex. App.—Houston [1st Dist.] 2004, no pet.) (holding that 60/40 division of
property was not inequitable when, among other things, wife earned more income
than husband during their marriage).  Carmen testified that she had no separate
property, and Alfonso testified that he had inherited, along with his siblings,
land from his father in Mexico.  See Abernathy v. Fehlis, 911 S.W.2d
845, 848 (Tex. App.—Austin 1995, no writ) (noting husband’s relative financial
condition, including inheritances, in upholding an unequal division of property
in favor of wife).  Further, Alfonso admitted that he transferred title of
community property to his nephew to prevent Carmen from getting at the
properties in a divorce action.  See In re Marriage of Notash, 118
S.W.3d 868, 872 (Tex. App.—Texarkana 2003, no pet.) (“Because a spouse has an
adequate remedy through disproportionate division of the community estate,
fraud on the community is properly considered when dividing a community estate.”).

Based
on the evidence presented at trial, the trial court did not abuse its
discretion by dividing the community property as it did.  See Naguib,
137 S.W.3d at 378; Neyland, 324 S.W.3d at 651.  We overrule Alfonso’s
second issue.

Conclusion

Having
overruled Appellant’s two issues, we affirm the trial court’s judgment.

 

LEE GABRIEL
JUSTICE

 

PANEL:  MCCOY,
MEIER, and GABRIEL, JJ.

DELIVERED:  August 2, 2012








 









[1]See Tex. R. App. P. 47.4.





[2]“Informal marriage” is the
statutory term for the colloquial term “common-law marriage.”





[3]Carmen testified that in
Mexico, a couple must be married by a civil court before they can have a
Catholic wedding.





[4]The Minden address is
comprised of three separate lots (1201, 1213, and 1217).  The three lots are
collectively referred to as 1207 and are approximately an acre and a half with
a small two bedroom house located on it.





[5]No testimony was given as
to when the East Cantey Street property was purchased.





[6]There is no order on
Alfonso’s motion for new trial in the clerk’s record before us.  However, the
trial court orally denied the motion at a hearing on the motion on July 14,
2011.





[7]Despite denying that this
trial was a divorce proceeding, he stated twice that he did not want Carmen
taking the property in a divorce.  He was asked,

Q.   Tell me again why you transferred the title on the
East Cantey property to your nephew, Mario Martinez.

A.   Because in 1989, when she got divorced, she left
me without anything; without a car, without nothing.

And later, he was asked again,

Q.   My understanding, and correct me if I’m wrong,
that you transferred the property to [your nephew] because you were afraid that
Mrs. Garcia would leave you with nothing if she got a divorce; is that correct?

A.   It is correct, because she did once.





[8]There was also no
testimony regarding attorney’s fees, but in the divorce decree, the trial court
ordered that Carmen and Alfonso be responsible for their respective attorney’s
fees.





[9]As the trial court noted, if
there is no purchased property in Mexico, it does not harm Alfonso to have it
awarded to Carmen.