**AFFIRM; and Opinion Filed February 11, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-00470-CV

## IN THE INTEREST OF N.A.F., M.J.F., AND O.J.F., CHILDREN

**On Appeal from the 256th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-15-01912**

## MEMORANDUM OPINION

Before Justices Bridges, Brown, and Whitehill
Opinion by Justice Brown

In this divorce action, appellant appeals the trial court's final order declaring that there was no informal marriage between her and appellee. In a single issue, appellant contends the evidence is legally and factually sufficient to prove an informal marriage and, specifically, that she and appellee represented themselves as married to others. For the following reasons, we affirm the trial court's order.

BACKGROUND

Appellant filed a petition for divorce, asserting she and appellee were married on or about April 12, 2002, and ceased to live together as husband and wife on or about May 1, 2013. Among other things, the petition alleged the couple had three children who were not under the continuing jurisdiction of any other court and prayed for a divorce, division of property, temporary spousal support and post-divorce maintenance, and appointment of the couple as joint managing

conservators and appellant as conservator with the exclusive right to designate the primary residence of the children. The petition did not request child support.

Appellee filed an answer, asserting a general denial and a defense that there was no existing marriage between the parties. Appellee subsequently amended his answer and defense to assert the parties lived together until separating in 2009 and the statute of limitations had run on any claim as to the existence of a common law marriage.

The parties subsequently tried the issue of whether there was an informal marriage to the trial court. At the outset, the trial court noted there were no temporary orders in the case regarding the children, and appellant's counsel explained that another trial court had already entered an order providing for "child support and everything" in an action filed by the Office of the Attorney General (OAG action).[1] Counsel also advised that appellant, through prior counsel, had filed a motion to transfer and consolidate the OAG action into this divorce action, but counsel had seen no order on the motion. Counsel represented, however, that appellant was not challenging the order in the OAG action and sought only resolution of whether there was an informal marriage and, if so, a division of property.

Appellant and appellee were the sole witnesses at trial. Appellant testified she met appellee in March 2002 and, from that night, he told her he was going to marry her. Within two weeks, appellant was living with appellee at his father's house, appellee was calling her his wife, and, shortly thereafter, appellee gave her a ring. To appellant, the ring signified she was appellee's wife and they were married; she assumed he felt the same. Appellant returned the ring after learning it had belonged to a previous girlfriend of appellee, but he bought her a new ring in 2005. Appellant represented to their children, family, friends, and co-workers that she and appellee were married. The couple exchanged greeting cards, including some that referred to "my wife," "my

---

[1] Cause number DF-04-10485, filed in the 255th Judicial District Court of Dallas County.

husband," and "marriage," to commemorate Mother's Day, Valentine's Day, and their anniversary. Appellee "gave" her one of his bank accounts and deposited an allowance into the account. Appellant also testified that, when they acquired a house, appellee named her on the deed so she "had a right to the house in case anything happened." The purchase money deed of trust admitted into evidence, however, lists only appellee and refers to him as an "unmarried man."

According to appellant, she and appellee cohabitated until 2009, separated on and off between 2009 and 2011,[2] and then lived together until May 2013. She resided with her parents during the separations. In 2009, appellant sought and obtained an order for child support through the OAG, and, in 2012, the order was modified to increase the support. After 2009, she never notified the OAG that she and appellee had resumed living together. Nor did she remember whether she ever told anyone at OAG that she and appellee were married. At some point, appellant learned appellee might have fathered another woman's child, and she no longer wished to continue their relationship.

Appellee filed his 2012 income tax return with the married, filing jointly filing status and designating appellant as his spouse. Appellant opined that, if appellee filed his return with a single filing status in other years, he did so because he was "[probably] afraid he would have to split any monies with [her]."

Appellee testified that he and appellant lived together from approximately 2004 until 2009. They started dating in 2002, and, between 2002 and 2004, appellant lived with her parents and he lived with his father. The couple shared an apartment in 2004, and appellee bought a house in 2005. The relationship terminated in either 2008 or 2009, around the time the child support order was "first initiated." Appellant did not live, or even spend a night, in appellee's house after the

---

[2] When asked whether the "off and on" separations between 2009 and 2011 were for "weeks or months or days," appellant responded "[a]ll of the above."

child support started and did not allow the children to stay overnight either. After 2009, appellee had relationships with three other women. One of the women lived with him, although not continuously, from 2010 to almost 2014. Appellant acknowledged that, after 2009, appellee had relationships and cohabitated with other women in their house.

Appellee gave appellant a ring, which he described as an engagement ring, in 2005 or 2006 shortly after he purchased his house and asked if she would like to "get engaged." Appellee never entered into an agreement with appellant to marry; they were engaged and anticipated marrying at some point in the future. He did not think he was married to appellant during the relationship and did not represent to others that they were husband and wife. Appellee gave appellant money to run the household. She was not listed on the deed for the house because, at the time, they were not engaged and there was no talk of getting married. Appellee sent appellant some greeting cards that included the word "wife," but it was not appellee's word. The anniversary cards he sent commemorated their first date. Appellee did not send appellant any cards after 2009.

In 2013, appellant approached appellee and asked him to file his 2012 tax return as married on her behalf, claiming the children as dependents, and then split the tax refund with her. Because she was not working, she would receive no financial benefit from filing her tax return with the single filing status. Appellee filed a joint return, received a refund, and gave half of the refund to appellant. The 2012 tax return was the only return they filed jointly. Before that, appellee filed with the single or head of household filing status. Appellee also testified that he filed his returns with the single filing status from 2013 through 2016, but subsequently acknowledged filing his 2014 and 2015 returns with the married, filing jointly status and designating as his spouse another woman to whom he was engaged. Appellee understood, at least at the time of trial, that it was fraudulent to file a tax return as married when he was not married.

At the close of the proceeding, the trial court announced the evidence proved cohabitation and an agreement to be married, but was insufficient to prove the couple represented themselves as married to others and, therefore, he was "going to deny the existence of an informal marriage." Appellant subsequently requested, but the trial court never entered, findings of fact and conclusions of law, and the trial court entered a final order that there was no informal marriage between appellant and appellee.

Appellant filed a notice of appeal, and, after reviewing the clerk's record, we wrote the parties questioning whether the trial court's order was final for purposes of our appellate jurisdiction when the order did not address the custody issues raised in the petition. In response, appellant filed a letter brief explaining that custody was not an issue in the case, appellant filed her petition pro se and erred in styling the case with the children's initials, and a final order in the OAG action addressed the custody issue. Although a motion to transfer and consolidate the OAG action into this divorce action had been filed, no order was ever signed or entered. Appellee did not respond to the letter brief.[3] In a subsequent letter, we advised the parties the Court would defer the jurisdiction issue to the submissions panel.

JURISDICTION

Before reaching the merits, we must inquire into our own jurisdiction to consider this appeal. *See Dallas County Appraisal Dist. v. Funds Recovery, Inc.*, 887 S.W.2d 465, 468 (Tex. App.—Dallas 1994, writ denied); *Matter of Estate of Lindsay*, 538 S.W.3d 759, 761 (Tex. App.—El Paso 2017, no pet.). Generally, an appeal may be taken only from a final judgment. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001). And, generally, a judgment is final for purposes of appeal only if it disposes of all pending parties and claims in the record. *Id.*

---

[3] Appellee also has not filed a brief in this appeal.

–5–

A petition in a suit for dissolution of a marriage must state whether there are children born or adopted of the marriage who are under eighteen years of age or otherwise entitled to support. TEX. FAM. CODE ANN. § 6.406(a). If a marriage involves such children, the petition must include a suit affecting the parent-child relationship (SAPCR) unless the children are under the continuing jurisdiction of another court. FAM. § 6.406(b); *see also* FAM. § 101.032 (defining SAPCR as a suit "in which the appointment of a managing conservator or a possessory conservator, access to or support of a child, or establishment or termination of the parent-child relationship is requested"). If a child is under the continuing jurisdiction of another court,[4] either party to the divorce action may move the court with continuing jurisdiction to transfer the SAPCR to the court with jurisdiction over the divorce. FAM. §§ 6.407(b), 155.201(a). If a motion is filed, the court with continuing jurisdiction must transfer the SAPCR and the court with jurisdiction over the divorce must consolidate the causes of action. *Id*.

Appellant's petition listed the couple's three children, as required by section 6.406(a), and prayed for the appointment of appellant and appellee as joint managing conservators and appellant as the conservator with the exclusive right to designate the primary residence of the children. Despite the petition's assertion otherwise, there was a trial court – the court with jurisdiction over the OAG action – with continuing jurisdiction over the children. Appellant filed a motion seeking the transfer and consolidation of the OAG action into this divorce action, but no order on the motion was entered and, at trial, appellant's counsel represented that she was not challenging the SAPCR order and only sought resolution of whether there was an informal marriage and, if so, a division of property.

---

[4] A court acquires continuing jurisdiction over a child only upon entry of a final order. FAM. § 155.001; *see, e.g., In Interest of D.W.*, 533 S.W.3d 460, 463 (Tex. App.—Texarkana 2017, pet. denied). If a SAPCR is pending at the time the divorce action is filed, the SAPCR must be transferred to the court in which the divorce action is filed. FAM. §§ 6.407(a), 103.002(b).

We construe the representations at trial by appellant's counsel as an abandonment of her motion to transfer and consolidate the SAPCR, as well as the allegation that there was no court of continuing jurisdiction over the children and request for a determination of custody issues in her pro se petition for divorce. *See In re C.C.J.*, 244 S.W.3d 911, 921 (Tex. App.—Dallas 2008, no pet.) ("A party who abandons any part of his claim or defense, as contained in the pleadings, may have that fact entered of record, so as to show that the matters therein were not tried." (quoting TEX. R. CIV. P. 165)). This is consistent with the letter brief submitted in response to our jurisdictional inquiry in which appellant's counsel represents that custody, having been resolved by the order in the OAG action, was not an issue in this case. Because the trial court's final order that there was no informal marriage between appellant and appellee, rendered after a trial on the merits, effectively disposed of all of the remaining parties and claims raised in appellant's petition for divorce, we conclude it is a final and appealable order. *See, e.g., Nguyen v. Nguyen*, 355 S.W.3d 82, 87 (Tex. App.—Houston [1st Dist.] 2011, pet. denied).

APPLICABLE LAW

The elements of an informal marriage are (1) an agreement by both parties to be married, (2) the parties lived together in Texas as a married couple after the agreement, and (3) the parties represented to others that they were married. See TEX. FAM. CODE ANN. § 2.401(a)(2); *Small v. McMaster*, 352 S.W.3d 280, 282–83 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). To establish the parties represented to others that they were married requires more than occasional references to each other as husband and wife. *Smith v. Deneve*, 285 S.W.3d 904, 909–10 (Tex. App.—Dallas 2009, no pet.). It may be established by the conduct, words, and/or actions of the parties, and a significant factor is whether the couple had a reputation in the community or public eye for being married. *See Small*, 352 S.W.3d at 285; *Eris v. Phares*, 39 S.W.3d 708, 715 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). The circumstances of each case must be determined

–7–

based upon its own facts. *Estate of Claveria v. Claveria*, 615 S.W.2d 164, 166 (Tex. 1981). The existence of an informal marriage is a fact question, and the party seeking to establish the marriage bears the burden of proving the three elements by a preponderance of the evidence. *Small*, 352 S.W.3d at 282–83.

In a bench trial, as here, where no findings of fact or conclusions of law were filed, we imply the necessary findings to support the trial court's judgment. *Holt Atherton Indus. Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992). If a reporter's record is filed, the appellant may challenge the legal or factual sufficiency of the evidence to support the implied findings. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002); *In re M.P.B.*, 257 S.W.3d 804, 808 (Tex. App.—Dallas 2008, no pet.). If the implied findings are supported by the evidence, we must uphold the trial court's judgment on any theory of law applicable to the case. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990).

When the party who had the burden of proof at trial complains of the legal insufficiency of the evidence to support an adverse finding, that party must demonstrate the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). Specifically, the party must show there is no evidence to support the adverse finding and establish the opposite of the finding. *Id.*; *R.J. Suarez Enter. Inc. v. Prvyx L.P.*, 380 S.W.3d 238, 245 (Tex. App.—Dallas 2012, no pet.). In reviewing a legal sufficiency complaint, we consider all of the evidence in the light most favorable to the prevailing party, crediting favorable evidence if reasonable factfinders could and disregarding contrary evidence unless reasonable factfinders could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). The ultimate test for legal sufficiency is whether the evidence would enable a reasonable and fair-minded factfinder to reach the finding under review. *Id.*

When a party who has the burden of proof attacks the factual sufficiency of an adverse finding, she must demonstrate the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co.*, 46 S.W.3d at 242. We must consider and weigh all of the evidence and can set aside the finding only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.*

In a bench trial, the trial court is the factfinder and the sole judge of the witnesses' credibility and the weight to be given their testimony. *Wright Group Architects-Planners, P.L.L.C. v. Pierce*, 343 S.W.3d 196, 199 (Tex. App.—Dallas 2011, no pet.). We may not pass upon the credibility of the witnesses or substitute our judgment for that of the trial court, even if the evidence would support a different result. *Id.*; *R.J. Suarez Enter. Inc.*, 380 S.W.3d at 245.

ANALYSIS

In a single issue, appellant maintains the trial court erred in finding that an informal marriage did not exist because the evidence is legally and factually sufficient to prove an informal marriage and, specifically, that she and appellee represented they were married to others. Appellant maintains the direct evidence that appellee filed the joint 2012 tax return as married and naming appellant as his spouse is sufficient evidence to prove the couple represented themselves as married to others.

Appellant relies upon *Estate of Claveria*, 615 S.W.2d 164, and *Persons v. Persons*, 666 S.W.2d 560, 562 (Tex. App.—Houston [1st Dist.] 1984, no pet.), as support for the 2012 tax filing alone constituting sufficient evidence to prove appellee and appellant represented themselves as married. In *Estate of Claveria*, the trial court determined a contestant had no interest in estate property because a prior undissolved common-law marriage rendered his ceremonial marriage to the testatrix void. The supreme court agreed with the trial court that a recorded deed and notarial acknowledgment in which both the contestant and his alleged common-law wife represented they

–9–

were husband and wife to the Veterans Administration was some evidence the two lived together and held themselves out to the public as husband and wife. *Estate of Claveria*, 615 S.W.2d at 167. Likewise, in *Persons*, the appellate court determined there was legally and factually sufficient evidence to sustain the trial court's finding that the appellee was the decedent's common-law wife when she testified she lived with the decedent, they signed a credit application for the purchase of the van, and the application named her as the decedent's spouse. *Persons*, 666 S.W.2d at 563 (citing *Estate of Claveria*, 615 S.W.2d at 167, and noting there was no evidence showing that either the appellee or the decedent represented themselves to others as single).

We agree with appellant that "absolutely no evidence" controverts the fact that appellee submitted the 2012 tax returned as married, filing jointly, and named appellant as his spouse. We further agree the filing constitutes some direct evidence that they represented themselves as married to others. However, on the record before us, we do not agree that "[t]his single act alone" is sufficient evidence to establish they represented themselves as married to others. Unlike *Estate of Claveria* and *Persons*, we are not reviewing the record to determine if there is some evidence to prove the parties represented themselves as married. Because appellant had the burden to prove an informal marriage existed, including the element that the parties represented themselves as married, the questions before us are whether (1) there is no evidence that would enable a reasonable and fair-minded factfinder to reach the trial court's implied finding, and (2) the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *See City of Keller*, 168 S.W.3d at 827; *Dow Chem. Co.*, 46 S.W.3d at 241–42.

In addition to evidence of the 2012 tax filing, there was evidence that appellant requested appellee to file the return jointly and share the refund with her because she was not working and would receive no financial benefit from filing her own tax return. And, although appellant claims they were married beginning in 2002, the 2012 tax return was the only return they ever filed jointly.

–10–

The 2005 deed of trust for the house purchase lists only appellee and refers to him as an "unmarried man."

Appellant testified that appellee called her his wife and she represented to their children, family, friends, and co-workers that she and appellee were married. Appellee, however, testified that he did not represent to others that they were husband and wife. Appellant sought child support in 2009, but did not remember whether she ever told anyone at OAG that she and appellee were married. Nor did she ever notify the OAG after 2009 that she and appellee had resumed living together and the payments should cease. Instead, the support was increased in 2012. Appellant testified she and appellee lived together from 2011 through May 2013, but both appellant and appellee testified that appellee cohabitated with other women in the house after 2009. And, appellee testified that appellant did not live, or even spend a night, in the house after the child support started.

Although appellant alleged she and appellee were married for more than ten years, she relies on a single tax return to establish they represented to others that they were married. She adduced no evidence of any other specific instances in which she and/or appellee held themselves out as husband and wife and whether such instances were common; nor did she elicit any testimony from family members or friends that she and appellee had a reputation in the community for being married. *See, e.g., Smith*, 285 S.W.3d at 910 (evidence was insufficient to show couple represented themselves as married to others when woman accepted ring, certain contracts listed couple as husband and wife, and couple were introduced as husband and wife, but there was no evidence whether such introductions were common or rare); *Castillon v. Morgan*, No. 05-13-00872-CV, 2015 WL 1650782, at *4 (Tex. App.—Dallas April 14, 2015, no pet.) (mem. op.) (evidence that woman and man represented themselves as married and insurance policies and homeowner information sheet listed them as husband and wife was insufficient to prove informal marriage

–11–

when there was no evidence regarding frequency of representations or whether anyone in community saw policies or information sheet); *Danna v. Danna*, No. 05-00472-CV, 2006 WL 785621, at *1–2 (Tex. App.—Dallas Mar. 29, 2006, no pet.) (mem. op.) (evidence of four occasions on which couple introduced themselves as husband and wife and AARP enrollment form signed by man referring to woman as his wife was insufficient to raise fact issue on representation as married to others); *cf. In the Interest of B.H.W.*, No. 05-15-00841-CV, 2017 WL 2492612, at *4–5 (Tex. App.—Dallas June 9, 2017, pet. denied) (when informal marriage lasted only a month before couple held a ceremonial marriage, a lack of evidence during that short time of multiple instances of couple representing themselves as married or having a reputation in the community for being married was not particularly indicative that no marriage existed).

Here, the trial court resolved the conflicting evidence before it by finding that appellant and appellee had not entered into an informal marriage. When the evidence is conflicting, the factfinder is the sole judgment of the credibility of the evidence and the weight to be given the testimony of the witnesses. *Wright Group Architects-Planner, P.L.L.C.*, 343 S.W.3d at 199. The trial court was free to credit appellee's testimony that he filed the 2012 tax return jointly, not as a public representation of the marriage, but simply in response to appellant's request so she might benefit financially by receiving part of the refund. Although another trial court might have resolved the issue differently, we may not pass upon the credibility of the witnesses or substitute our judgment for that of the trial court. *Id.*; *see, e.g.*, *Pedone v. Garvey*, 07-17-00394-CV, 2018 WL 3677804, at *6 (Tex. App.—Amarillo Aug. 2, 2018, no pet.) (mem. op.) (as the sole judge of witnesses' credibility, the trial court could reasonably have disregarded alleged wife's controverted testimony regarding her claim that she and alleged husband had a public reputation in the community as husband and wife).

Considering all of the evidence in a light most favorable to appellee, we conclude the evidence would enable a reasonable and fair-minded factfinder to reach the finding that appellant and appellee did not represent themselves to others as married. Without evidence of this element, there could be no finding of an informal marriage. We further conclude, considering and weighing all of the evidence in a neutral light, the trial court's finding is not so weak or so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. Because the evidence is legally and factually sufficient to support the finding, we conclude the trial court did not err in finding there was no informal marriage between appellant and appellee.

Moreover, when a trial court issues an adverse ruling without specifying its grounds for doing so, an appellant must challenge each independent ground asserted in the trial court; the appellant cannot demonstrate harm due to one erroneous basis for the trial court's ruling when another basis remains unchallenged. *See, e.g., RSL Funding, LLC v. Pippins*, 499 S.W.3d 423, 434 (Tex. 2016) (per curiam); *Oliphant Fin. LLC v. Angiano*, 295 S.W.3d 422, 424 (Tex. App.—Dallas 2009, no pet.); *Britton v. Tex. Dep't of Criminal Justice*, 95 S.W.3d 676, 681–82 (Tex. App.—Houston [1st Dist.] 2002, no pet.). Although the trial court stated at the close of trial that the evidence proved cohabitation and an agreement to be married, a trial court's oral statements do not constitute findings of fact. *See* TEX. R. CIV. P. 299a; *Intec Sys., Inc. v. Lowrey*, 230 S.W.3d 913, 918 (Tex. App.—Dallas 2007 no pet.). Further, this Court must imply findings necessary to support the final order. *See Holt Atherton Indus. Inc.*, 835 S.W.2d at 83–84. Here, appellant has challenged only the sufficiency of the evidence to establish that the couple represented themselves to others as married, but, at trial, appellee also asserted the evidence was insufficient to establish an agreement to be married. Insufficient evidence of either element would have supported the trial court's final order that there was no informal marriage; therefore, we also must affirm the order because appellant has not challenged an implied finding that appellant and appellee did not agree

–13–

to be married.  *See, e.g., RSL Funding, LLC*, 499 S.W.3d at 434; *Oliphant Fin. LLC*, 295 S.W.3d at 424; *Britton*, 95 S.W.3d at 681–82.  Accordingly, we overrule appellant's sole issue.

We affirm the trial court's final order.

/Ada Brown/
ADA BROWN
JUSTICE

170470F.P05



## Court of Appeals
## Fifth District of Texas at Dallas
# JUDGMENT

IN THE INTEREST OF N.A.F., M.J.F., AND O.J.F., CHILDREN

No. 05-17-00470-CV

On Appeal from the 256th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DF-15-01912.
Opinion delivered by Justice Brown; Justices Bridges and Whitehill participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Marcus Jefferson Finley recover his costs of this appeal from appellant Melissa Ann Carter.

Judgment entered this 11th day of February, 2019.